# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MYKA DENISE COCKRILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:11-00797 |
| v. ) | Judge Nixon/ Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 10. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Supplemental Security Income ("SSI") on January 25,

1

2008, alleging that she had been disabled since January 28, 2008,[1] due to human immunodeficiency virus (HIV), hepatitis C, left knee problems, and "lumps in [her] throat." *See, e.g.,* Docket No. 7, Attachment ("TR"), pp.16, 35, 64, 113-18, 125. Plaintiff's application was denied both initially (TR 53) and upon reconsideration (TR 54). Plaintiff subsequently requested (TR 71) and received (TR 80-85) a hearing. Plaintiff's hearing was conducted on April 30, 2010, by Administrative Law Judge ("ALJ") Roy J. Richardson. TR 31. Plaintiff and a vocational expert ("VE"), Susan Brooks, appeared and testified. *Id.*

On August 11, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 16-23. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since January 25, 2008, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: arthralgia, degenerative joint disease of the left knee, human immunodeficiency virus (HIV), depression, hepatitis C, headaches, schizoaffective disorder, and gender identification disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. The

---

[1] Plaintiff claimed an alleged onset date of January 1, 2007 on her initial application for SSI, but amended it to January 28, 2008 at her hearing. TR 35, 113.

      claimant's ability to push/pull would be limited to the weights given. The claimant could only occasionally climb, balance, stoop, kneel, crouch, or crawl. The claimant would be able to understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers in jobs that do not require independent decision making. The claimant has the mental capacity to perform work where interpersonal contact is only incidental to work performance.

  5.  The claimant has no past relevant work (20 CFR 416.965).

  6.  The claimant was born on January 19, 1961 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

  7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

  8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

  9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

  10.  The claimant has not been under a disability, as defined in the Social Security Act, since January 25, 2008, the date the application was filed (20 CFR 416.920(g)).

TR 18-22.

  On August 19, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 11. On July 21, 2011, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a

3

whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

4

supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[2]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) improperly according minimal weight to the opinions of Rodney S. Adams and Dr. Son Li,[3] and 2) improperly assessing Plaintiff's residual functional capacity ("RFC"). Docket No. 11. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery*

---

[3] Although both parties reference Dr. Son *Le*, the undersigned notes that the Dr. Son *Li* was Plaintiff's treating source. *See, e.g.,* TR 518.

7

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**<u>1. Weight Accorded to the Medical Opinions of Treating Sources</u>**

Plaintiff contends that the ALJ improperly accorded minimal weight to Mr. Adams' and Dr. Li's treating source statements without providing legitimate reasons for doing so.  Docket No. 11.  Specifically, Plaintiff asserts that these opinions are well-supported and consistent with substantial evidence in the record.  *Id.*  Plaintiff maintains that there is no evidence that contradicts Mr. Adams' mental health treating source statement, and that accordingly, his statement should either be given controlling weight or that the ALJ should request a consultative examination of Plaintiff.  *Id.*  Regarding Dr. Li's opinion, Plaintiff highlights that Dr. Li consistently treated her for approximately one year, maintains that Dr. Li is a specialist in neurology, and argues that substantial evidence supports Dr. Li's opinion.  *Id.*  Plaintiff argues that Dr. Li's opinion is evidence of her hand problems and upper extremity weakness.  *Id.*

Defendant responds that the ALJ properly followed the treating physician rule and correctly accorded minimal weight to Mr. Adams' and Dr. Li's opinions, and that the ALJ's determination regarding these opinions was supported by substantial evidence.  Docket No. 16.  Regarding Mr. Adams' opinion, Defendant maintains that, contrary to Plaintiff's argument that it was "uncontroverted," at least two physicians opined that Plaintiff suffered no mental limitations.  *Id.*  Defendant also maintains that Mr. Adams' opinion was inconsistent with substantial evidence of record.  *Id.*  Defendant notes that the Regulations do not require an ALJ

to purchase a consultative examination for a claimant, and contends that a consultative examination was unnecessary in the instant case. *Id.* Defendant continues that the ALJ properly discredited Mr. Adams' opinion because his treatment notes lacked detail and were contradictory to other substantial evidence. *Id.* Regarding Dr. Li's opinion, Defendant argues that the ALJ was under no obligation to accord controlling weight to the treating source statement because it was inconsistent with other substantial evidence of record. *Id.* Finally, Defendant maintains that the ALJ adequately articulated his reasons for according little weight to these opinions. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs

9

and laboratory findings, the more weight we will give that opinion.
The better an explanation a source provides for an opinion, the more
weight we will give that opinion. ...
    (4) Consistency. Generally, the more consistent an opinion
is with the record as a whole, the more weight we will give to that
opinion.
    (5) Specialization. We generally give more weight to the
opinion of a specialist about medical issues related to his or her area
of specialty than to the opinion of a source who is not a specialist.
    ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

On February 26, 2010, Mr. Adams completed a Treating Source Statement regarding Plaintiff's mental ability to do work-related activities. TR 515-17. In that assessment, Mr. Adams opined that Plaintiff was mentally limited in making occupational, performance, and interpersonal adjustments. *Id.* Specifically, Mr. Adams opined that Plaintiff had a fair ability to follow work rules; use judgement; function independently; understand, remember and carry out simple job instructions; and maintain personal appearance. *Id.* He further opined that Plaintiff had poor to no ability to relate to co-workers; deal with the public; interact with supervisors; deal with work stresses; maintain attention and concentration; understand, remember and carry out detailed but not complex and complex job instructions; behave in an emotionally stable manner;

10

relate predictably in social situations; and demonstrate reliability. *Id.* The ALJ considered this opinion and, as will be discussed below, found it to be contradictory to the medical evidence of record. TR 21.

On March 11, 2010, Plaintiff's treating physician Dr. Li completed a Treating Source Statement regarding Plaintiff's physical capacity to do work-related activities. TR 518-19. In that assessment, Dr. Li opined that Plaintiff could not sit, stand, or walk for more than 2 hours in an 8-hour workday; could grasp, but not push or pull; could perform repetitive movements with her right leg, but not her left leg; could rarely lift or carry 0 to 4 pounds; could rarely bend and never squat, crawl, climb, or reach above her shoulder. *Id.* Dr. Li also noted that Plaintiff was severely restricted regarding activities involving unprotected heights; being around moving machinery; being exposed to marked changes in temperature and humidity; driving automotive equipment; and being exposed to dust, fumes, and gases. *Id.* Dr. Li further noted that Plaintiff suffered limitations from severe pain, tension headache syndrome, chronic lumbar back pain, myofacial pain syndrome, and degenerative disc disease. *Id.* The ALJ likewise considered this opinion and, as will be discussed below, found it to be inconsistent with the medical evidence of record. TR 21.

In the case at bar, the ALJ thoroughly analyzed the medical record, including Mr. Adams' and Dr. Li's treating source statements. Observing that Plaintiff had received treatment at Comprehensive Care Center; Center for Spine, Joint, and Neuromuscular Rehabilitation; Sumner Regional Medical Center; Endocrinology and Diabetes Care, Inc.; and Summit Bone and Joint PLLC, the ALJ stated:

> The claimant testified she had been precluded from working due to
> chronic back/neck pain and headaches, symptomatology for which

she uses Flexeril, Lortab, a back brace, and a TENS unit. While the claimant acknowledged an ability to live on her own, she reported doing no household chores, other than cooking once a week. The claimant, who testified her family does all her household chores, estimated she could sit 2 to 2.5 hours, stand 2 to 3 hours, walk short distances, and lift only 4 pounds. The claimant attributed her limited ability to lift to chronic swelling, tingling, and numbness in her hands. On questioning by her representative, the claimant acknowledged she lost her nursing license due to problems with narcotic pain medication.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Two months before her alleged onset date, the claimant, whose treating diagnosis included HIV, hepatitis C, depressive disorder, and gender identity disorder, reported "fatigue from extra work hours, otherwise well." While it is noted the claimant developed exacerbated lower back pain following a March 2008 motor vehicle accident, the evidence or lack thereof until November 2008, when she presented reporting foot pain secondary to a recent fracture, persisting back pain, and depression, does not suggest the claimant's overall physical or mental health significantly declined during 2008. In fact, physical examination revealed paraspinous muscle spasm, but not thoracic or lumbar tenderness.

While it is noted the claimant commenced medical care for back, neck, bilateral shoulder, arm, and ankle pain in January 2009, it is also noted her symptoms significantly improved within weeks with a conservative treatment regime that included physical therapy and trigger point injections. In fact, progress notes dated February 13, 2009, show after less than 6 weeks of medical care the claimant rated her pain since her last "visit with treatment" a 2 on a scale of 0 to 10 with 10 being the most severe. Though it is noted in the months that followed the claimant, who consistently reported her "medications are working to well control her pain" reported varying degrees of pain or pain between a 4 and 6 on the pain scale, it is also noted her symptoms were associated at least in part with residuals from an April 2009 goiter surgery.

12

These facts, and progress notes from 2009, which show minimal mention or observation of depressive symptomatology or symptoms consistent with a schizoaffective disorder after June, do not support the degree of ongoing limitation alleged. In fact, progress notes show when examined in December 2009, the claimant specifically denied depression and anxiety and demonstrated no significant musculoskeletal limitations other than mild swelling and tenderness to palpation on left lateral foot, symptoms that were associated with a recent left 5th metatarsal fracture. The facts do not support the mental limitations reported by her counselor, Rodney S. Adams in February 2010, or the physical limitations recommended by Dr. Son Li in March 2010. At the hearing, the undersigned took administrative notice that these assessments would preclude competitive work if substantiated by the record. As the evidence of record does not support the assessments, the undersigned has assigned minimal weight to the limitations proposed by these treating sources.

The evidence shows that the claimant has been able to live on her own throughout the time period relevant to this decision. She acknowledged pain control with conservative treatment, which has included epidural steroid injections, a back brace, and a TENS unit. This evidence considered with the record as a whole establishes that the claimant would not be precluded from performing the demands of light work with occasional postural maneuvers. In addition to physical restrictions, the undersigned finds that the claimant would experience moderate limitation in social function and concentration/persistence/pace. These limitations would preclude the claimant from understanding, remembering, and carrying out more than routine step instructions, responding appropriately to supervisors and coworkers in jobs that require independent decision making, and performing work where interpersonal contact is more than incidental to work performance. There is, however, no evidence that substantiates that claimant's allegations of chronic hand weakness and numbness.

This decision is based on updated evidence that was not available for review by the State agency, and a different interpretation of the evidence reviewed by the State Agency physician.

TR 20-21 (internal citations omitted).

As can be seen, the ALJ explicitly considered the opinions of Mr. Adams and Dr. Li in

13

accordance with the criteria set forth above, and determined they were inconsistent with substantial evidence of record. The reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). Because there is substantial evidence to support the ALJ's decision that the opinions of Mr. Adams and Dr. Li were inconsistent with the record as a whole, the ALJ is not required to give their opinions controlling weight. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating sources' opinions are weighed against the contradictory evidence under the criteria listed above, and the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. *Id.*; 20 C.F.R. § 416.927(e)(2).

Because there was contradictory evidence in the record, and because the ALJ properly considered the medical and testimonial evidence, the Regulations do not mandate that the ALJ accord Mr. Adams or Dr. Li's opinions controlling weight. Accordingly, Plaintiff's argument fails.

### 2. Residual Functional Capacity

Plaintiff also contends that the ALJ improperly determined her RFC. Docket No. 11. Specifically, Plaintiff argues that, when reaching his decision, the ALJ improperly relied on a single office visit to Summit Bone and Joint PLLC in December 2009 during which Plaintiff "denie[d] anxiety depression." *Id.* Plaintiff contends that this single office visit report does not constitute substantial evidence to support the ALJ's RFC determination. *Id.* Plaintiff

14

additionally asserts that, when reaching his RFC determination, the ALJ improperly analyzed Plaintiff's activities of daily living. *Id.* Plaintiff particularly notes that although she lives alone, she significantly relies on others to take care of her personal needs, and essentially contends that her ability to live alone, therefore, is not a factor that should be weighed heavily by the ALJ. *Id.*

Defendant responds that, when making his RFC determination regarding Plaintiff, the ALJ properly relied on Plaintiff's contemporaneous statements to her doctors, her reports to the agency, and her sworn testimony regarding her daily activities. Docket No. 16. Defendant argues that the ALJ considered the record in its entirety as required by the Regulations, and that the ALJ's RFC determination was appropriate. *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

The ALJ's detailed discussion of Plaintiff's physical and mental limitations was recounted at length above and will not be repeated here. As that discussion indicates, the ALJ not only considered Plaintiff's treatment at Summit Bone and Joint PLLC, but also considered her treatment with Comprehensive Care Center; Center for Spine, Joint, and Neuromuscular

Rehabilitation; Sumner Regional Medical Center; and Endocrinology and Diabetes Care, Inc. TR 20-21. Thus, Plaintiff's contention that the ALJ relied upon a single office visit comment, rather than consider the record as a whole, is erroneous.

Regarding Plaintiff's living situation and daily activities, the ALJ's discussion of the evidence above reveals that the ALJ explicitly acknowledged her testimony regarding her living situation and assistance needs. *See* TR 20-21. The ALJ, after evaluating all of the medical and testimonial evidence of record, as well as Plaintiff's reported level of activity, determined that, despite her protestations to the contrary, Plaintiff retained the RFC to perform "the demands of light work with occasional postural maneuvers," with "moderate limitations in social function and concentration/persistence/pace." TR 21. The ALJ's discussion of the medical and testimonial evidence above demonstrates that the ALJ considered the evidence of record, reached a reasoned decision, and clearly articulated a basis for his RFC finding. The Regulations do not require more. Accordingly, the ALJ's determination must stand.

## V.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

17

Case 3:11-cv-00797   Document 17   Filed 01/30/13   Page 17 of 17 PageID #: 732